IRVING, J.,
dissenting.
¶ 26. The majority finds that the strike of a single juror is sufficient to establish a prima facie case that race was the motivat *1268 ing factor for the exercise of the peremptory strike. The majority also finds that the trial court’s refusal to accept, as race-neutral, Davis’s reason for striking this juror was not clearly erroneous. I disagree with both of these finding. Accordingly, I respectfully dissent.
¶ 27. Davis used his first peremptory strike on juror Sherwin Agustín. The court responded, “If I may, I think she’s a member of his [Davis’s race].” Thereafter, the prosecutor stated, “He appears to be an Oriental male, Your Honor. We’d ask for a race neutral reason.” Davis’s attorney responded, “Well, Your Honor, first of all I don’t think it’s established that he is or is not an Oriental male or an Asian male based on appearances alone.” The court then stated, “I don’t think a prima facie showing has been made at this time, but if you want to state your race neutral reasons you may.” Davis’s attorney declined the court’s invitation and argued that she did not believe she was required to put forth a reason because there was nothing in the record to indicate the juror’s ethnicity.
A Batson analysis is a three part inquiry. First, the objecting party is required to make a prima facie showing that peremptory strikes are being exercised on the basis of race. Second, after the [objecting party] makes such a showing the burden then shifts to the party exercising the strikes to offer a race-neutral reason for the challenge. Third, the court must determine if the opposing party has met the burden of proving that purposeful discrimination was the motive behind the challenges.
Taylor v. State, 733 So.2d 251 (¶ 30) (Miss.1999).
¶ 28. The record indicates both the trial court and prosecutor believed that Agustín is Asian. However, it is not disputed that the record does not contain any evidence from which an objective determination can be made. The opinion of the trial judge, as well as the prosecutor’s, relative to Agustin’s ethnicity was based on observation alone. The prosecutor argued that she had established a prima facie case that ethnicity was the basis for the strike because of two reasons: the venire did not contain any other Asians and the victim was Asian. The trial judge was convinced by this argument and reconsidered his opinion that a prima facie showing had not been met.
¶ 29. As previously observed, I do not believe a pattern of discriminatory peremptory strikes based on ethnicity can be ascertained from the exercise of a single strike. Having said this, I am keenly aware that Batson prohibits racial discrimination in the jury selection process, whether it is directed toward a single juror or several. Therefore, if Davis sought to strike Agustín because of Agustin’s ethnicity, then that action is prohibited by Bat-son. However, when, as here, the venire contains only one member of a particular ethnic group and that member has been struck, a finding that a prima facie case of ethnic discrimination has been established will always be inevitable if the exclusivity of the juror’s ethnicity becomes the sole criterion for such determination. Without more, I do not believe that an opponent of a peremptory strike meets his burden as to the first prong of the Batson analysis. Nothing more was offered here other than the fact that the victim and the challenged juror appeared to share the same ethnicity-
¶ 30. Certainly, shared ethnicity between the victim and the challenged juror alone is not enough to establish a prima facie showing of discrimination based on race. If this were the case, a prima facie case of racial discrimination always will be met with the first strike of a juror who shares the same ethnicity as the victim. *1269 But more importantly, as a defendant is not entitled to a jury composed in whole or in part of persons of Ms own race (see Batson v. Kentucky, 476 U.S. at 85, 106 S.Ct. 1712 (1986)), neither is the State entitled to a jury composed in whole or in part of members sharing the same ethnicity as the victim. Yet, that is exactly what the State seemed to be aiming at when the prosecutor said to the court, ‘Your Honor, first I would submit that Mr. Agustín is the only person that appears to be of Asian background on the entire panel. We are dealing with a victim who is of Asia descent.” The State, as well as the defendant, is entitled only to a jury whose members are chosen pursuant to nondiscriminatory criteria.
¶ 31. In reconsidering his initial decision that a prima facie case had not been met, the trial court appeared persuaded by the State’s argument that Mr. Agustin’s ethnicity should be accorded greater weight in the weighing process because he and the victim share the same ethnicity. This is what the court said: “I have reconsidered, and I think that given that he’s the only one that even appears to be that [of Asian decent] certainly you can go ahead and make your race neutral reasons known to the court or ethnicity neutral reasons or ethnic neutral reasons.”
¶ 32. After being compelled to give her race-neutral reason for striking Mr. Agus-tín, Davis’s counsel offered the following:
Well, Your Honor, in light of the fact that based on my recollection, and the Court’s may be different, Mr. Agustín did not respond verbally to any question during voir dire either from the Court, the State or myself.
The court rejected the reason as not being race-neutral.
¶ 33. The majority does not find the court’s decision to be clearly erroneous or against the overwhelming weight of the evidence. I respectfully disagree. To elucidate my reasons for disagreeing on this point, I quote directly from the record:
BY THE COURT: That’s the only basis, Ms. Burkes, that he didn’t respond? BY MS. BURKES: Yes, sir. His absolute lack of response to any question from either the Court, the District Attorney or defense counsel during voir dire. Your Honor, there are two other witnesses — two other prospective jurors who would fall into that same category or being nonresponsive. 1-6, Peggy King, and I’m trying to find this one, Sallie Ober, 1-12. I’m not sure how to pronounce it.
BY THE COURT: Ober.
BY MS. BURKES: Yes, sir. We would strike all three because of their lack of response to any questions.
BY THE COURT: It’s always a tough call, but I can’t think of that being a neutral reason that the juror didn’t respond because I think that most jurors, or a good number of the jurors, certainly up to 50 percent of the jurors who are impaneled in my history, don’t make any responses. So I’m going to find that that was not an ethnic neutral reason. We will just have to go on the record made and he will be placed in the box.
¶ 34. The case of Taylor v. State, 733 So.2d 251 (Miss.1999), provides insightful guidance with respect to the appropriate analysis of a Batson challenge. In Taylor, the trial court refused to accept as race-neutral the reasons the defense gave for striking two jurors. The defense had sought to strike two jurors “because they may be needed at their places of employment.” Id. at 259 (¶ 36). This Court upheld the trial court’s decision, but the Mississippi Supreme Court reversed this Court and the trial court and remanded the case for a new trial. In doing so, the Taylor court pointed out that in evaluating the nature of the explanation necessary to *1270 survive a Batson inquiry, the second step does not demand an explanation that is persuasive, or even plausible. All that is required is the facial validity of the explanation. Id. at (¶ 34). In this case, the reason offered for striking Mr. Agustín clearly passes the facially-valid test. Thus, it became the responsibility of the State, in the third prong of the analysis, to prove that purposeful discrimination was the motive behind the challenge.
¶ 35. As to the third prong, the State offered nothing in rebuttal that arguably indicates that the reason given for the strike was pretextual. In fact, the State seeks to use the shared ethnicity of the victim and of the juror to prove both the first and third prongs of the Batson analysis. As previously discussed, this certainly is insufficient to sustain a Batson challenge. Otherwise, a sustainable Batson challenge will always exist when a juror, who shares the same race or ethnicity as the victim, is struck, notwithstanding the facially-valid reason for the strike.
¶ 36. In this case, Davis’s counsel struck every juror who was nonresponsive to questions from the court and counsel. How then can it be legitimately argued that purposeful discrimination was the motive behind counsel’s action in striking Mr. Agustín? The trial judge determined that the reason given for striking Mr. Agus-tín — he did not respond to questions from either the court or counsel — was not an ethnic-neutral reason. This finding is clearly erroneous. Perhaps, the court meant that it was pretextual. Even in that event, a finding that the reason was pre-textual would be clearly erroneous and against the overwhelming weight of the evidence, given the fact that Davis’s counsel struck all jurors similarly situated. Therefore, I would reverse and remand for a new trial.
¶ 37. For the reasons presented, I respectfully dissent.